# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**HEATHER HOLT**                                                                                **PLAINTIFF**

**VS.**                           **No. 3:21-cv-00012 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
    **Social Security Administration**                                **DEFENDANT**

## ORDER

Plaintiff Heather Holt ("Holt") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB"). Holt maintains the Administrative Law Judge ("ALJ") erred in four ways: (1) by finding her anxiety and depression were not severe impairments; (2) by failing to properly assess the opinion evidence of Dr. Barry Hendrix ("Hendrix") and advanced practice nurse Heather Bastel ("Bastel"); (3) by failing to properly determine her residual functional capacity ("RFC"); and (4) by failing to find the vocational expert's testimony was inconsistent with the *Dictionary of Occupational Titles*. The parties have ably summarized the testimony given at the administrative hearing conducted on January 28, 2020. (Tr. 30-63). The Court has carefully reviewed the record, including

the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from August 1, 2016, the alleged onset date, through February 28, 2020, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Holt stated she was 43 years old and lived with her boyfriend of fifteen years and her pet dog. Holt's mother and son live nearby. She was 5' 1" and weighed 248 pounds. Holt has a high school education, and last performed substantial gainful activity in 2015, when she ran a video store. Holt worked briefly in 2017 at Quik Stop, and briefly in 2018 as a florist. These jobs, according to Holt, required more standing than she could perform.

Asked to identify problems preventing her from working, Holt cited several impairments: degenerative disc disease of her lower back, which was being treated with epidural steroid injections every two weeks (the shots provided relief for 4-6 days, according to Holt, but produced the side effect of elevated blood sugar level); diabetes, affecting her ability to stand/walk, lift/carry, push/pull, and causing dizziness and sleepiness, which was being treated with 3-4 insulin shots daily plus a weekly shot of Trulicity;[1] hypertension, causing her face and chest to get red, and causing

---

[1] Holt stated her blood sugar reading exceeded 300 "quite often." (Tr. 38).

anxiety and nervousness; right "leg drop" resulting in numbness, tingling, burning, and stinging; fibromyalgia, with a finding of 18 out of 18 trigger points, being treated with gabapentin three times daily; sleep apnea, treated with a CPAP device; left leg surgery about 10 years ago, resulting in being wheelchair bound for over a year, during which time she gained 75 pounds; rapid heart rate, for which she wore a heart monitor 8 days before the hearing (no results were available at the hearing); chest pain and palpitations 2-3 times a week, with dizziness, especially when standing too fast; falls in the prior year, resulting in her daily use of a walker and use of a riding cart at the grocery store; shortness of breath when walking or using the toilet; anxiety and eye twitch, for which she takes Xanax (Holt had not seen a mental health care provider); irritable bowel syndrome ("IBS"), the symptoms of which she had experienced "most of my life"[2] (Tr. 49); and "c-diff," a germ that causes diarrhea and colitis (c-diff is also known as Clostridioides difficile). (Tr. 50).

      Holt described a typical bad day for her – she cannot get out of bed. On a good day, she gets up early, deals with stomach problems, takes her medications and returns to bed around 7 a.m. Later, on a good day, she tries to do dishes or puts clothes in the washer. Holt described sitting when she cooks. She and her boyfriend both cook

---

[2] Holt indicated she was referred to a gastroenterologist for her IBS "but he was drunk" at her appointment. (Tr. 50).

though Holt stated she does "a lot of the cooking." (Tr. 52). For hobbies, Holt makes jewelry and paints. Friends visit her and assist with getting in and out of the shower, and Holt stated she gets along with them well. Being in public causes her to be nervous and, as a result, she passes gas in public.

Holt's attorney questioned her further. In response, she reiterated that the epidural steroid shots provide relief, but only for 4-6 days. Holt also stated she has more bad than good days, estimating she has 2 good days each week. She testified she could not perform an 8 hour job on her bad days. According to Holt, her diet is protein and vegetables, to address her IBS. She described activities, such as fishing and riding a motorcycle, which she can no longer perform. (Tr. 36-59).

Dr. Thomas E. Bott ("Bott"), a vocational expert, testified. The ALJ posed a series of hypothetical questions, the first of which asked Bott to consider a hypothetical worker of Holt's age, education, and experience, who could perform sedentary work with the following restrictions: she would be able to understand, remember, and carry out simple job instructions; would be able to make judgments in simple work-related situations; could respond appropriately to co-workers, supervisors, as well as the public; could respond appropriately to minor changes in the usual work routine; would need to avoid exposure to hazards such as unprotected heights, close proximity to dangerous equipment, tools, machines, supplies, electrical

shock, but would be able to operate a vehicle. Bott responded that such a worker could not perform Holt's past relevant work. Bott testified, however, that such a worker could perform three jobs: escort vehicle driver, document preparer, and election clerk. The ALJ altered the initial hypothetical question, adding in the restriction of needing multiple breaks and being off task for 15% of the workday. Bott stated there were no jobs appropriate for such a worker. Similarly, no jobs were available if the hypothetical worker were to miss more than two days a month on a regular basis. (Tr. 59-61).

*ALJ's Decision:*

In his February 28, 2020, decision, the ALJ determined Holt had the following severe impairments: degenerative disc disease of the lumbar spine, diabetes mellitus, peripheral neuropathy, degenerative joint disease right ankle, degenerative joint disease right hip; fibromyalgia; obesity; and obstructive sleep apnea.

The ALJ discussed the following impairments which he deemed non-severe: mild chronic gastritis, hypertension, anxiety, and depression. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Holt had a mild limitation in the four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

The ALJ found Holt did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered if Holt met any relevant listings in section 1.00, including 1.04 (disorders of the spine), section 9.00 (endocrine disorders), section 3.00 (respiratory disorders), or Listing 11.14 (peripheral neuropathy). The ALJ also addressed Holt's obesity and fibromyalgia, finding her obesity may exacerbate her symptoms and her fibromyalgia caused some limitations. Even so, the ALJ found no evidence that obesity or fibromyalgia, either singly or in combination, met a listing.

The ALJ determined Holt had the RFC to perform sedentary work with the following restrictions – she may use an assistive device when standing or walking, she should avoid exposure to hazards such as unprotected heights and close proximity to dangerous equipment, tools, and supplies, and she is capable of operating motor vehicles.[3] The ALJ thoroughly discussed the medical evidence, beginning with treatment notes from September 2016, Holt's first visit after her alleged onset date. The ALJ determined Holt's statements concerning the intensity, persistence and

---

[3] The RFC in the ALJ's decision varied somewhat from the restrictions listed in the initial hypothetical question posed to Bott. Specifically, unlike the hypothetical question, the ALJ's RFC did not include restrictions for simple job instructions, judgments in simple work-related situations, responding appropriately to co-workers, supervisors, the public, and responding appropriately to minor changes in the usual work routine.

limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18). The ALJ addressed Hendrix's February 2019 medical source statements:

> Finally, the claimant's primary care physician, Barry Hendrix, M.D., provided a medical source statement in February 2019. Dr. Hendrix opined that the claimant is limited to an extremely reduced range of sedentary work (lifting less than 10 pounds, standing/walking less than two hours, and sitting less than two hours), she has "moderate" and "marked" limitations in all mental work-related activities, and she would miss work more than three days per month. This opinion is not persuasive because Dr. Hendrix provided no support for the opinion except a list of diagnoses and the opinion is inconsistent with most of the other medical evidence of record, including Dr. Hendrix's treatment records. As discussed above, the objective psychiatric and mental status examinations showed consistently normal findings. Additionally, the physical examinations showed many normal findings. Dr. Richardson's examinations showed some significant abnormalities that support limiting the claimant to sedentary work , but the evidence of record as a whole contradicts greater limitations. [citations omitted].

(Tr. 22).

The ALJ also considered the opinions of the state agency experts, who opined Holt could perform light work. The ALJ found these opinions "somewhat persuasive." (Tr. 22). However, the ALJ did not fully embrace the state experts' opinions, finding greater limitations (sedentary work with restrictions) were warranted. The ALJ determined Holt could not perform her past relevant work. However, relying upon Bott's testimony, the ALJ found Holt could perform other sedentary work in the national economy. Accordingly, the ALJ concluded she was

not disabled. (Tr. 10-24).

*Claim One – ALJ Erred in Finding Holt's Anxiety and Depression were not Severe Impairments*

Holt contends the ALJ erred by failing to acknowledge, at Step 2 of the sequential evaluation, that her anxiety and depression were severe impairments. The standard for finding a severe impairment is low. *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007). Holt bears the burden of showing she has a medically determinable impairment or combination of impairments that significantly limits her ability to perform basic work activities. *Kirby v. Astrue*, 500 F.3d 705 (8th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4))(ii), 404.1520 (c), and 404.1521(a). An impairment is not severe if it is only a "slight abnormality" that does not significantly limit the ability to do basic work activities. *Kirby v. Astrue* at 707. Additionally, a diagnosis alone does not establish the existence of a severe impairment. *Perkins v. Astrue*, 648 F.3d 892 (8th Cir. 2011).

Substantial evidence supports the ALJ's finding that Holt's anxiety and depression were non-severe. Three reasons support this finding. First, the determination at Step 2 is a medical determination, *see Bowen v. Yuckert*, 482 U.S. 137 (1987), and there is little medical evidence that Holt's mental impairments have more than a minimal effect on her ability to work. She testified that she had not been

seen or treated by a mental health provider. She also testified she took Xanax for anxiety, although she conceded that it was prescribed by her optometrist to treat an eye twitch.

Second, to the extent there is medical evidence relevant to Holt's mental impairments, it is unremarkable. While Holt cites subjective complaints she made to Bastel, the ALJ correctly cited consistently normal findings regarding her orientation, cognitive function, insight and judgment, mood and affect, attention span and concentration, and judgment and thought content. Notably, these normal findings were rendered by numerous providers throughout the relevant period. For example, Hendrix found her alert, oriented, cooperative, with cognitive function intact in August, September, and October 2017. (Tr. 437, 440, 447). Gastroenterologist Michael Sifford ("Sifford") noted intact insight and judgment, normal mood and affect in March 2018. (Tr. 452). Rheumatologist Beata Majewski ("Majewski") recorded normal mental status, good attention and concentration span, as well as alert and oriented in October 2018. (Tr. 456). Neurologist Yuanyuan Long ("Long") found Holt's behavior, mood, affect, judgment and thought content normal in November 2018. (Tr. 481). In April of 2019, Stacy Richardson, D.O., ("Richardson") cited a normal mood, affect, behavior, judgment, and thought content. (Tr. 723). These consistent findings continued in March, May, and August 2019 as reported by nurse

practitioner Rendi Kahoun ("Kahoun") and APRN Stephanie McMellon. (Tr. 760, 770, 815).

Third, the ALJ's failure to identify Holt's mental impairments as severe impairments at Step 2 is ultimately of little legal significance. Once the ALJ proceeds past Step 2, as he did here, the labeling of an impairment as "severe" or "non-severe" has little legal significance because the ALJ is obliged to consider all of the claimant's impairments in crafting the RFC. *See* 20 C.F.R. 416.945(e).

There is no merit to Holt's first claim, as substantial evidence supports the ALJ's decision.

*Claim Two – ALJ Error in Assessing Opinion Evidence*

Holt contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating physician Hendrix and advanced practice nurse Bastel. Hendrix offered his opinions in medical source statements in February 2019.[4] Holt cites a treatment note from November 2018 as the source of Bastel's opinion.

---

[4] Hendrix executed two Medical Source Statements in February 2019. Both statements were checklists, and both indicated Holt's limitations began in January 2018. The Physical Medical Source Statement listed objective medical findings in support of the limitations as Holt's "poor tolerance to activity aside from basic ADLs." (Tr. 704). The Mental Medical Source Statement listed "depression, anxiety" as objective medical evidence supporting Holt's limitations. (Tr. 706).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Holt filed her claim on December 11, 2018. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. With regard to Hendrix's

February 2019 medical source statements, the ALJ satisfied the regulatory requirements. The paragraph from the ALJ's decision, quoted above, addresses both the supportability and consistency of Hendrix's opinions, and amply explains why the ALJ deemed the opinions unpersuasive.

Holt faults the ALJ's reasoning in several ways. For example, she contends that the ALJ erred in citing "normal" findings. (Tr. 22). In her view, the aggressive treatment she received (e.g., epidural steroid shots, narcotics, physical therapy, and treatment from specialists) shows her health was not normal and supports the limitations listed by Hendrix. The ALJ, however, did not imply Holt was in normal health in all respects. Instead, he wrote "the objective psychiatric and mental status examinations showed consistently normal findings." *Id.* These normal findings were addressed in connection with Holt's first claim for relief. The medical records support the ALJ's statements regarding the mental findings

On the subject of physical limitations the ALJ noted "the physical examinations showed *many normal* findings." [emphasis added] *Id.* The medical records also support the ALJ's statements regarding physical findings. As with the mental findings in the treatment records, a variety of providers found Holt to have a normal range of motion, muscle tone, and coordination. Hendrix, Sifford, Majewski, Long, Richardson, and Kahoun noted as much. (Tr. 437, 440, 447, 456, 481, 722, 759-760,

770). The providers were not unanimous with regard to the physical findings, and the ALJ also noted and credited the abnormal findings of orthopedic surgeon Travis Richardson. Dr. Travis Richardson diagnosed Holt with numerous back problems and administered injections of Toradol, performed bilateral medial branch blocks and radiofrequency treatments in 2018, and administered epidural steroid injections and Toradol injections in 2019. (Tr. 585-624, 696-700, 832-897, 928-963, 970-982). The RFC determination itself portrays Holt not as normal but as limited to sedentary work with restrictions. There was no error by the ALJ in his assessment of both the normal and abnormal medical findings.

Holt also contends the ALJ failed to properly assess her obesity and fibromyalgia, two impairments which she contends support Hendrix's opinions. The ALJ, however, addressed obesity and fibromyalgia in his decision. There is no merit to this argument.

In summary, the ALJ complied with the pertinent regulations requiring him to consider the supportability and consistency of Hendrix's opinions.[5]

---

[5] Holt also contends the ALJ erred by failing to mention and address the November 2018 opinion of Bastel. In a treatment note Bastel wrote Holt "is unable to sustain gainful employment at this time. This is not likely to improve to the point that she can maintain employment." (Tr. 491-492). Bastel's note differs significantly from the medical source statements submitted by Hendrix, her employer. Bastel does not identify and assess any functional limitations, nor does she cite objective medical bases for her statements. In addition, her opinion focuses not on medical limitations

*Claim Three – ALJ Error in Assessing RFC*

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Holt contends there is a lack of medical evidence to support the ALJ's RFC conclusion. Specifically, Holt argues that the ALJ assessed her with mild limitations in understanding, remembering, or applying information and interacting with others but the ALJ failed to include corresponding limitations in his RFC assessment. There is no merit to this argument. The ALJ's "paragraph B" findings of mild limitations are not RFC determinations. The ALJ explicitly stated the mild limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 . . . The mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment." (Tr. 15). In addition, the ALJ's analysis of the paragraph B criteria was admittedly generous, crediting Holt's subjective statements despite objective examinations showing "no abnormalities." *Id.* The ALJ's RFC formulation noted Holt's assertion of anxiety, and her use of Xanax, but also noted

---

but on disability, which is a topic which is reserved for the Commissioner. The ALJ did not err in assessing Bastel's treatment note.

14

"she otherwise receives no mental healthcare." (Tr. 18). Simply put, the ALJ was not obligated to include mental limitations in his RFC determination based upon his paragraph B assessment of mild limitations.

Holt also contends the ALJ erred in assessing her IBS. According to Holt, her testimony of frequent diarrhea, coupled with the ALJ's finding that she had mild gastritis, should have resulted in a specific limitation in her RFC. But the ALJ specifically addressed the IBS testimony as well as the objective medical evidence. The ALJ noted normal gastrointestinal findings during the relevant period, except for a few findings of mild abdominal tenderness, and a normal colonoscopy. Holt was seen often by Hendrix and other providers, and typically complained of numerous impairments, but not of disabling gastrointestinal impairments. Further, the ALJ noted Holt's testimony that her gastrointestinal problems began years before the onset of the relevant period, when she was working full-time despite these symptoms. The medical records support the ALJ's finding that Holt's assertions were "not entirely consistent" with the medical evidence. (Tr. 18). The ALJ partially discounted Holt's subjective statements, and gave valid reasons for doing so. Substantial evidence supports the RFC ultimately reached by the ALJ, and the determination was not defective for its failure to include limitations stemming from Holt's IBS.

*Claim Four – failure to find the vocational expert's testimony was inconsistent*

*with the Dictionary of Occupational Titles.*

Bott, the vocational expert, testified that the hypothetical worker described by the ALJ could perform the jobs of escort vehicle driver, document preparer, and election clerk. Holt complains that two of the jobs cited by Bott, document preparer and election clerk, require the worker to possess a reasoning level of three, as specified in the *Dictionary of Occupational Titles*. Since the ALJ's initial hypothetical question contained mental limitations (e.g., simple job instructions, judgments is simple work-related situations), Holt argues there was a conflict between her limitations and these cited jobs. The flaw in this argument, however, rests in the difference between the parameters of the hypothetical question and the actual RFC as determined in the ALJ's written decision. The ALJ's RFC did not contain mental limitations. As a result, there was no conflict to be resolved between the jobs cited by Bott and the abilities of Holt as determined by the ALJ.

Holt further contends that the third job cited by Bott, escort vehicle driver, also presented a conflict because the *Dictionary of Occupational Titles* described this job as requiring constant sitting while the ALJ determined Holt could sit for six hours during a workday. Having found no error in the ALJ's determination that Holt could perform the jobs of document preparer and election clerk, the Court declines to address this alleged conflict.

The ALJ properly relied upon Bott's testimony to find Holt capable of performing work in the national economy.

In summary, the ultimate decision of Kijakazi was supported by substantial evidence. The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence support s a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Holt's complaint is dismissed with prejudice.

IT IS SO ORDERED this 7th day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE